**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0684-18T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HAKIM R. NELSON, a/k/a
DARNELL KNIGHT and
RAUSHAWN NELSON,

    Defendant-Appellant.

_____

        Submitted June 4, 2020 – Decided July 23, 2020

        Before Judges Alvarez and DeAlmeida.

        On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 15-11-1363.

        Joseph E. Krakora, Public Defender, attorney for appellant (Stephen William Kirsch, Designated Counsel, on the brief).

        Gurbir S. Grewal, Attorney General, attorney for respondent (Daniel A. Finkelstein, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Tried by a jury, defendant Hakim R. Nelson was convicted of all twelve counts in an indictment. As to Ahmad Musleh: third-degree impersonation/theft of identity, N.J.S.A. 2C:21-17(a) (count one); fourth-degree trafficking in personal identifying information, N.J.S.A. 2C:21-17.3(a) (count two); third-degree theft by deception, N.J.S.A. 2C:20-4 (counts three and four); and second- and third-degree computer theft, N.J.S.A. 2C:20-25(c) (counts five and six). As to Alberto Parache: third-degree impersonation/theft of identity, N.J.S.A. 2C:21-17(a) (count seven); fourth-degree trafficking in personal identifying information, N.J.S.A. 2C:21-17.3(a) (count eight); third- and fourth-degree theft by deception, N.J.S.A. 2C:20-4 (counts nine and ten); third-degree attempted theft by deception, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:20-4 (count eleven); and second-degree computer theft, N.J.S.A. 2C:20-25(c) (count twelve).[1] After appropriate mergers, the judge sentenced defendant on September 7, 2018, to the following concurrent terms: five years on count one, eighteen months on count two, ten years on count five subject to five years parole ineligibility, and

---

[1] Defendant's co-defendant, Lincoln Balfour, a bank employee, was charged in the two remaining counts of the indictment with second-degree computer theft, N.J.S.A. 2C:20-25(e) (count thirteen); and second-degree access and disclosure, N.J.S.A. 2C:20-31(b) (count fourteen).

A-0684-18T1

five years on count six. The judge imposed the sentences for the crimes committed against the second victim consecutively to count five, although all were concurrent to each other. They were: on count seven, imprisonment of five years; on counts eight and ten, eighteen-month terms; on count twelve, eight years subject to parole ineligibility of four years. Thus, defendant's aggregate sentence was eighteen years imprisonment with the corresponding terms of parole ineligibility. For the reasons that follow, we affirm.

Defendant impersonated Musleh and Parache on the phone gaining access to their TD Bank accounts and stealing approximately $26,000 from the two victims. During the trial, two sets of recorded phone calls made to TD Bank were played for the jury. One set dated from September 2014 and consisted of the suspect claiming to be the victims. The other set was defendant's calls accessing his own bank accounts. The latter was introduced to compare defendant's voice to that of the thief.

Piscataway Police Department Sergeant Daniel Kapsch and Musleh testified that the impersonator's voice was defendant's. The recordings are the focus of defendant's appeal.

Pretrial, the court conducted a Rule 104 hearing regarding the admissibility of Kapsch's testimony identifying defendant as the speaker.

3

During that hearing, Kapsch said he interacted with defendant beginning in December 2004, when he responded to a call about a verbal dispute. Kapsch encountered defendant again when he arrested and processed him in July 2005, August 2005, and March 2006. He interacted with defendant a number of times while on routine patrol and was acquainted with defendant's father.

Kapsch testified he listened to the phone calls between the person impersonating Musleh and Parache after obtaining documents from TD Bank's investigation that had "developed defendant as a suspect." Although it had been nine years since the last contact, he identified defendant's voice because it was so distinctive.

During his investigation, Kapsch spoke with defendant on the phone. The fraudulent calls originated from that same number. Having heard defendant's voice again, Kapsch was one hundred percent certain defendant was the person who called TD Bank, pretending to be the real account owner.

In his oral decision regarding the admissibility of Kapsch's identification, the judge found Kapsch credible and forthcoming. Kapsch's opinion was "rationally based on his perception, the perception made when he interacted with the defendant and what he heard on the audiotape." Additionally, the testimony would assist the jury in ascertaining the identity of the caller to TD Bank.

4

When the hearing was conducted, the State had not informed defendant that it would also play taped calls he allegedly made directly to TD Bank as a way to identify the impersonator's voice. Defendant at that point was also unaware Musleh would identify defendant's voice on the recordings.

During the trial, defendant questioned why Kapsch's testimony was even necessary if the jury was going to have the opportunity to hear the voice of a person identifying himself as defendant dealing with his TD Bank account. Initially, the judge did not rule on the issue, as the argument shifted to whether defense counsel had been provided copies of the tapes of defendant's phone calls. When counsel raised the issue a second time at the end of the day, the judge instructed counsel to provide additional research on the question, and informed the attorneys he would revisit the matter after that.

On the next day of trial, the State filed a motion in limine requesting a 104 hearing on Musleh's testimony. Defense counsel again objected that Kapsch should not be allowed to identify defendant when the jury could make their own finding based on comparisons of the two sets of phone calls. Counsel and the judge engaged in a colloquy during which defense counsel stated defendant would not stipulate that it was his voice on the recordings made to the bank regarding his own account. The judge ruled that the jury could hear Kapsch's

identification, in addition to the tapes allegedly of defendant's voice regarding his own account.

During the 104 hearing, Musleh testified he recognized defendant's voice because he shopped at his supermarket approximately once a month over the last five years. The judge ruled that Kapsch and Musleh could both "testify that they recognize the voice on the audio recordings captured by TD bank wherein the defendant purportedly is impersonating [the victims]."

When Musleh testified before the jury, he identified defendant as the caller who impersonated him based on his acquaintance over the years. Kapsch also testified, explaining he knew defendant from the community, and identified his voice as the impersonator. During the course of the State's presentation, the prosecutor played several clips, asking Musleh and Kapsch after each if they could confirm the voice was defendant's.

The jury also heard the testimony of a senior investigator at TD Bank. After Parache reported the fraudulent transactions on his account, the investigator requested certain documents "[t]o see if there was any internal link to the fraud." When asked if she developed any suspects as a result, she stated "[t]he internal was Lincoln Balfour which then led to Hakim Nelson."

In his closing charge to the jury, the judge instructed on counts eleven and twelve, attempted theft by deception and computer criminal activity, stemming from defendant's last failed attempts to withdraw money from the victims' accounts. The attempts were unsuccessful because the transactions were blocked by the bank.

The judge further instructed:

> The statute upon which this count of the indictment is based, states in pertinent part, a person is guilty of computer criminal activity, if the person purposely or knowingly, and without authorization, or in excess of authorization, accesses or attempts to access any data, data base, computer, computer storage medium, computer program, computer software, computer equipment, computer system, or computer network for the purpose of executing a scheme to defraud, or to obtain services, property, personal identifying information, or money, from the owner of a computer or any third party.
>
> In order to convict defendant of computer criminal activity, the State must prove the following elements beyond a reasonable doubt. One, that defendant purposely or knowingly accessed or attempted to access any data, database, computer, computer storage or medium, computer program, computer software, computer equipment, computer system, or computer network.
>
> That defendant did not have authorization or acted in excess of authorization. And that defendant acted with purpose to execute a scheme to defraud, or to obtain services, property, personal identifying

information, or money, from the owner of a computer or any third party.

The first element that the State must prove beyond a reasonable doubt is that the defendant purposely or knowingly accessed or attempted to access any data, database, computer, computer storage medium, computer program, computer software, computer equipment, computer system, or computer network.

. . . .

The second element the State must prove beyond a reasonable doubt is that the defendant did not have authorization or acted in excess of authorization.

. . . .

The third element that the State has to prove beyond a reasonable doubt is that the defendant acted with purpose to execute his scheme to defraud or to obtain services, property, personal identifying information, or money from the owner of a computer or any third party.

At sentencing, based on defendant's substantial criminal history, which included six prior indictable offenses, the judge found aggravating factors three, six, and nine. No mitigating factors were found.

Defendant raises the following points on appeal:

POINT I

SIMILAR TO THE BASIS FOR REVERSAL IN STATE V. LAZO, THE TRIAL JUDGE

IMPROPERLY ADMITTED, OVER DEFENSE OBJECTION, LAY OPINION TESTIMONY OF A POLICE OFFICER AND OF ANOTHER WITNESS THAT DEFENDANT'S VOICE WAS THE ONE HEARD ON RECORDINGS.

POINT II

IN VIOLATION OF THE CONFRONTATION AND HEARSAY DOCTRINES OF STATE V. BRANCH AND OTHER CASES, THE STATE IMPROPERLY INTRODUCED TESTIMONY THAT INVESTIGATORS DISCOVERED SECRET INFORMATION REGARDING THE CODEFENDANT'S STATUS AS THE "INTERNAL LINK" TO THE FRAUDS INSIDE TD BANK, AND THAT THEN THE CODEFENDANT, WHO DID NOT TESTIFY AT TRIAL, IMPLICATED DEFENDANT TO INVESTIGATORS.

POINT III

THE JURY WAS INCORRECTLY INSTRUCTED THAT ATTEMPTING TO ILLEGALLY ACCESS COMPUTER INFORMATION CONTRARY TO N.J.S.A. 2C:20-25C CAN BE COMMITTED WITH A PURPOSEFUL OR KNOWING STATE OF MIND WHEN ONLY A PURPOSEFUL STATE OF MIND SUFFICES FOR A CRIMINAL ATTEMPT.

POINT IV

THE SENTENCE IMPOSED IS MANIFESTLY EXCESSIVE.

I.

"In reviewing a trial court's evidential ruling, an appellate court is limited to examining the decision for abuse of discretion." Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008).

Defendant contends first that Kapsch and Musleh's testimony was impermissible lay opinion testimony. The argument has no merit. Lay opinion testimony is admissible if it "(a) is rationally based on the perception of the witness and (b) will assist in understanding the witness' testimony or in determining a fact in issue." N.J.R.E. 701. A lay witness's perception "rests on the acquisition of knowledge through use of one's sense of touch, taste, sight, smell or hearing." State v. McLean, 205 N.J. 438, 457 (2011). The second requirement "is limited to testimony that will assist the trier of fact either by helping to explain the witness's testimony or by shedding light on the determination of a disputed factual issue." Id. at 458.

Defendant relies heavily on State v. Lazo, 209 N.J. 9 (2012), in making his argument. In that case, the New Jersey Supreme Court held that a police officer's opinion that he selected the particular photograph of the defendant for a photo lineup, because it resembled a composite sketch created based on the victim's description, was inadmissible under Rule 701. Id. at 24.

A-0684-18T1

The Court considered federal cases in fashioning a standard for the admissibility of identification lay testimony in New Jersey. This included a Ninth Circuit case that held that "lay witness testimony is permissible where the witness has had sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful." Id. at 22 (quotations omitted) (quoting United States v. Beck, 418 F.3d 1008, 1015 (9th Cir. 2005)). Whether an opinion was "helpful" depends on a variety of factors including the witness's familiarity with defendant's appearance, whether defendant disguised himself, and whether the witness knew defendant over time and in a variety of circumstances. Ibid. (quoting Beck, 418 F.3d at 1015); see also State v. Carbone, 180 N.J. Super. 95, 97-100 (Law Div. 1981). Other factors include whether additional, non-law enforcement witnesses could testify to defendant's identification and whether defendant's appearance had changed prior to trial. Lazo, 209 N.J. at 23.

There were a number of reasons the Lazo Court found the detective's testimony inadmissible. A key distinction between those facts and these is that the Lazo detective's testimony was not based on his prior personal familiarity with defendant, stemmed entirely from the victim's description, and did nothing more than bolster the victim's account. Id. at 24.

In this case, however, both Kapsch and Musleh had a solid familiarity with the distinctive sound of defendant's voice arising from their contacts with him over multiple years. The testimony would assist the jury in determining a disputed issue of fact, namely, the identity of the caller who made the illegal transfers. Thus, the requirements of Rule 701 are met.

This jury had to assess whether, based on Kapsch and Musleh's testimony, the voice they ultimately identified as belonging to defendant was his. Their role was to make an independent judgment regarding, first, whether the identification made by those witnesses, based on their perceptions over time, was justified. But the jury was free to reject the identifications made by the witnesses.

Nothing in Rule 701 prohibits the admission of lay testimony under these circumstances. It was understandable that as a matter of strategy defense counsel did not stipulate that his was the voice that purported to be directing activity in his own account. The judge therefore did not abuse his discretion in admitting the lay opinion testimony. It met the second requirement of N.J.R.E. 701—it assisted the jury in determining a fact in issue.

A-0684-18T1

II.

Defendant contends that the TD Bank investigator violated the proscription against the introduction of the confession of a non-testifying co-defendant. See State v. Gentry, 439 N.J. Super. 57, 72 (App. Div. 2015). It is well-established that a co-defendant's inculpating out-of-court statement is inadmissible as a violation of the rule against hearsay and a defendant's constitutional right to confront witnesses. Id. at 72-73. Those rules did not apply here.

The challenged testimony did not refer to anything that Balfour may have said. Rather, the investigator only stated that as a result of her investigation, she was led to defendant. Thus, the argument has no merit.

Defendant also contends that the admission violated State v. Bankston, 63 N.J. 263, 271 (1973) and State v. Branch, 182 N.J. 338, 349 (2005). The TD Bank investigator was not a police officer, however, and her passing reference to Balfour did not create an "inescapable inference" that the police received information from an unknown source implicating defendant in the crime. Bankston, 63 N.J. at 271. It is just as plausible that the jury would speculate that the investigator was led to defendant through bank records, which were an element of the State's case against defendant. The bank records indicated that

defendant used stolen funds, for example, to pay the Cablevision bill for his home and to purchase an automobile. After the victims' accounts were blocked, he attempted to transfer $10,000 to two individuals who lived "a couple of houses away" from him. This claim has no merit.

### III.

We review jury instructions for plain error when no objections are raised at trial. State v. Singleton, 211 N.J. 157, 182 (2012). Generally, a plain error is one that is "clearly capable of producing an unjust result." R. 2:10-2. With jury instructions, "plain error requires demonstration of 'legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" State v. Chapland, 187 N.J. 275, 289 (2006) (quoting State v. Hock, 54 N.J. 526, 538 (1969)).

Defendant contends that the trial court erred as to counts eleven and twelve by charging the jury that "a person is guilty of computer criminal activity, if the person purposely or knowingly . . . accesses or attempts to access any data . . . for the purpose of executing a scheme to defraud . . . ." He claims the verdict sheet repeated the error, and that the error violates the well-established principle

A-0684-18T1

that a purposeful state of mind is required for criminal attempt. See State v. Rhett, 127 N.J. 3, 7 (1992).

The computer criminal activity statute states "[a] person is guilty of computer criminal activity if the person purposely or knowingly . . . [a]ccesses or attempts to access any data, . . . ." N.J.S.A. 2C:20-25(c) (emphasis added). The model jury charge restates the entire statute and informs the jury the State must prove beyond a reasonable doubt that defendant "accessed or attempted to access data" and that they did so "purposely or knowingly." Model Jury Charge (Criminal), "Computer Criminal Activity – Access to Defraud" (approved June 11, 2018). Because the judge here followed the model jury charge verbatim, there is no plain error. Mogull v. CB Commercial Real Estate Grp., 162 N.J. 449, 466 (2000) ("It is difficult to find that a charge that follows the Model Charge so closely constitutes plain error."). The lack of specificity that the criminal attempt required a purposeful state of mind, given the nature of the crime, did not have the capacity to bring about an unjust result. Thus, this argument also lacks merit.

IV.

"An appellate court's review of a sentencing court's imposition of sentence is guided by an abuse of discretion standard." State v. Jones, 232 N.J. 308, 318

15

(2018). A reviewing court's authority to overturn a trial court's sentence is limited to a "clear error of judgment or a sentence that 'shocks the judicial conscience.'" State v. Blackmon, 202 N.J. 283, 297 (2010) (quoting State v. Roth, 95 N.J. 334, 363-65 (1984)). Specifically, a trial court is "clearly mistaken" in its sentencing where the sentencing guidelines were not followed or applied, the aggravating and mitigating factors are not based on sufficient evidence in the record, or the application of the guidelines in the particular case is so unreasonable as to shock the judicial conscience. State v. Jarbath, 114 N.J. 394, 401 (1989).

Defendant contends the judge did not consider two mitigating factors, one and two, in sentencing him, thus making his sentence improper. Factor one is that "defendant's conduct neither caused nor threatened serious harm," and factor two is that the "defendant did not contemplate his conduct would cause or threaten serious harm." N.J.S.A. 2C:44-1(b)(1) and (2). The amount of money at issue defeats that argument. The judge found defendant's crimes had "a profound effect on [the victims'] lives." Thus, the judge's failure to find mitigating factors was not an abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0684-18T1